Bunker *v.* Anderson.

SALLY A. BUNKER, surviving executrix &c.,

*v.*

JOHN J. ANDERSON and others.

1. A mortgage of lands in New Jersey, drawn in New York, to executors, "their successors and assigns," containing the usual clause conveying all the mortgagor's estate, right, title, interest &c. in the premises, and recorded in full, is notice to a subsequent mortgagee and judgment creditor of the mistake and that such mortgage was intended to convey the fee.

2. An answer by a grantee of the mortgagor, that he is *now* informed and believes it to be true that the mortgagees agreed with the mortgagor, at the time such grantee's deed was given, to release the premises from the lien of their mortgage, without any proof of such agreement, is not available as a defence to the foreclosure of such mortgage, although no replication having been filed to such answer it must be taken to be true.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. R. J. Hopper,* for complainant.

*Mr. Geo. H. Coffey,* for the answering defendants.

THE CHANCELLOR.

The bill is filed to rectify and foreclose a mortgage for $10,000 and interest, given July 1st, 1865, by John J. Anderson and his wife to the complainant and another person, now dead, as executors of Thomas G. Bunker, deceased, on land in Bergen county. It was recorded in full on the 11th of August in that year. Anderson and his wife gave to Leverett H. Sage a mortgage on the same property for $5,000 and interest, in October, 1865. Sage assigned this mortgage to Benjamin B. Sherman, in 1873. William S. Banta recovered a judgment against Anderson, in the Bergen circuit court, on the 24th of June, 1878, for $1,531.55. The Philadelphia and Reading Coal and Iron Company recovered a judgment, in the supreme court of this state, against Anderson, on the 29th of April, 1878, for $1,541.17. Anderson and his wife conveyed part of the mortgaged premises to Henry Stutzer, in May, 1873. Sherman, Banta and Stutzer have answered. The last sets up an agreement on the part of the mortgagees, made with him when he took his conveyance, to release his property from the complainant's mortgage. No replication has been filed to his answer, and as to him the cause was set down on bill and answer. The contest is between the complainant and Sherman and Banta, and the question is, whether Sherman and Banta are chargeable with notice of the complainant's mortgage. As before stated, that mortgage was recorded in full. It was drawn by a New York lawyer, and the word " heirs " was erased from the blank on which it was written, and the word " successors " substituted therefor. It, indeed, conveys only a life estate, but the record was notice that the parties to the mortgage intended to convey a fee; for after the description of the land are these words:

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, dower and right of dower, property, possession, claim and demand whatso-

ever, as well in law as in equity, of the said parties of the first part, of, in and to the same and every part and parcel thereof, with the appurtenances.  To have and to hold all and singular the above granted and described premises, with the appurtenances, unto the said parties of the second part, their successors and assigns forever."

There is in this language clear evidence of an intention to mortgage the fee of the land—clear evidence of an intention to convey all the estate of the mortgagors, both at law and in equity, to be held by the mortgagees and their successors and assigns forever.  This language was, indeed, found in the mortgage which the court refused to reform as against a judgment creditor, in *Wheeler* v. *Kirtland, 8 C. E. Gr. 13 ; S. C. on appeal, 9 C. E. Gr. 532.*  But the opinion of the court of last resort in the subsequent case of *Gale* v. *Morris, 3 Stew. 285,* on the subject of notice deprives that fact of all importance.  It may be remarked that in *Wilson* v. *King, 12 C. E. Gr. 374,* a case in which rectification was denied, the mortgage was given to the mortgagee in her individual capacity, and not, as in this case, to executors and their successors forever.  Sage appears to have had actual notice of the existence of the complainant's mortgage.  Mr. Anderson swears that Sage, when he took his mortgage, knew that he (Anderson) had given the complainant's mortgage, and Sage, who was sworn in the cause, does not deny it; and he does not say that he supposed that the complainant's mortgage was intended as an encumbrance upon a life estate merely, and not on the fee.  He, as surety for Anderson, joined him in the bond which the complainant's mortgage was given to secure.  The mortgagors intended to give, and the mortgagees expected to receive, a mortgage of the fee, and the lawyer by whom the instrument was drawn supposed that the mortgage conveyed a fee.  The second mortgagee and the judgment creditors and Stutzer must, under the circumstances, be held to have had notice of the mistake in the complainant's mortgage.

As to Stutzer, though his answer must be taken as true, it does not allege that the complainant agreed to release the

land conveyed to him from her mortgage, but states that he is now informed by Anderson, and that he believes it to be true, that the complainant agreed (with Anderson) to release that land from the mortgage. It appears from the answer that he did not know of the existence of the complainant's mortgage until shortly before the filing of his answer, which was more than five years and a half after he received his deed. Anderson, when he sold the property to him, told him it was free from encumbrance, and he paid Anderson a full price for it. There is no evidence in the cause on the subject of this defence set up by Stutzer, and it is not so set up in his answer as to be available to him without proof.

There will be a decree in accordance with these views.